IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEFFREY COLEMAN, No. 13853-028, RANDALL A. MILLER, and ANDREW DUNK, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 17-cv-1282-JPG ) |
| U.S. MARSHAL SERVICE, and RANDY COBB | ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

This matter is before the Court for case management and for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Plaintiff Jeffrey Coleman filed the instant action naming himself and five other individuals as plaintiffs. At the time of filing, all of the Plaintiffs were incarcerated at White County Jail ("Jail"). Initially, with the exception of Coleman, none of the Plaintiffs signed the Complaint or submitted an IFP motion.

On December 18, 2017, the Court entered a preliminary order pursuant to *Boriboune v. Berge*, 391 F.3d 852 (7th Cir. 2004) ("*Boriboune* Order"). (Doc. 5). In it, each plaintiff, aside from the lead plaintiff Coleman, was ordered to advise the Court in writing, no later than January 15, 2018, whether he wished to pursue his claims in group litigation. The Court also ordered each non-lead plaintiff who wanted to continue in this group action to submit a signed copy of the Complaint on or before the January 15, 2018 deadline.

The deadline passed with varying responses. Accordingly, on February 1, 2018, the Court entered a second case management order. (Doc. 16). In it, Plaintiffs Edwards and Rander

1

were dismissed from the action based on their failure to timely respond to the *Boriboune* Order. Plaintiff Jones was also dismissed, after responding to the *Boriboune* Order and indicating that he did not wish to proceed with this group litigation. Plaintiffs Miller and Dunk submitted incomplete responses. Therefore, the Court allowed Miller and Dunk a brief extension, until February 15, 2018, in which to comply with the *Boriboune* Order. To date, both Miller and Dunk have asked to remain parties to this group action, have submitted signed complaints, and have filed IFP motions. (*See* Docs. 7, 9, 17, 18, and 21).

Despite the above, as an initial matter, the Court concludes that joinder is not appropriate. *See* FED. R. CIV. P. 20(a)-(b), 21; *Chavez v. Illinois State Police*, 251 F.3d 612, 632 (7th Cir. 2001). Therefore, each remaining plaintiff will be required to pursue his claims in a separate action. But before doing so, each remaining plaintiff must file an amended complaint in his separate case because the Complaint (Doc. 1) does not survive screening under 28 U.S.C. § 1915A.

**Background**

Only three plaintiffs remain in this action: (1) lead plaintiff Coleman; (2) non-lead plaintiff Miller; and (3) non-lead plaintiff Dunk. The Complaint was filed by Coleman, purportedly on behalf of himself and 5 other individuals who, at that time of filing, were in custody at the Jail. (Doc. 1). It appears that Miller and Dunk are still in custody at the Jail. Coleman, however, is presently in custody at FCI McDowell in the Southern District of West Virginia. (Doc. 22).

The Complaint includes three sets of claims: (1) claims pertaining to recreational/exercise opportunities and cell conditions; (2) claims pertaining to food served at the Jail; and (3) claims pertaining to law library access. For the most part, the allegations in the first

set of claims are associated with a single plaintiff, presumably Coleman, the apparent author of the Complaint (e.g., "plaintiff has been incarcerated at White County Jail for numerous months" and "plaintiff is forced to breathe in recycled air"). However, these claims occasionally reference a group of individuals (e.g., "we have not been permitted to engage in recreational activities"). The allegations in the second set of claims are primarily associated with Coleman. The allegations in the third set of claims are associated with "plaintiffs" in general.

*Cell Conditions*

According to the Complaint, Coleman was housed in a cell with eight other inmates that was approximately the size of a single car garage. (Doc. 1, p. 5). Coleman claims that it was difficult to exercise or stretch in his cell and that, as a result, he suffered from neck, back, and leg pain. *Id.* Coleman also claims that the cell lacked fresh air and that the lack of fresh air exacerbated his asthma. *Id.* Finally, Coleman alleges that, during his time at the Jail, he and other federal inmates were not allowed to engage in out of cell recreational activities. *Id.* When Coleman inquired about participating in recreational activities, Cobb (the Jail Administrator) told him the head of the United States Marshal Service said that federal inmates were not allowed to participate in recreational activities. *Id.* It is unclear whether Miller and Dunk were subjected to the same complained of conditions.

*Diet at the Jail*

Coleman complains that the Jail diet consists of overly processed foods and is devoid of fresh food such as fruit. (Doc. 1, p. 7). According to the Complaint, the lack of variety in the Jail diet violates state rules that require county jails to rotate the menu every ninety days. *Id.* Coleman filed grievances with Cobb regarding the diet, but did not receive a response. *Id.* Coleman also blames the United States Marshal Service for the allegedly inadequate diet because

this agency is supposed to provide county jails with funds to ensure that the needs of federal prisoners are met. (Doc. 1, p. 8).

*Law Library Access*

Coleman generally claims that the rights of "plaintiffs" are being violated because the Jail does not have a law library. (Doc. 1, p. 9). Coleman states that, even though referenced plaintiffs are represented by counsel, they need access to a law library because their attorneys are often overworked and/or make mistakes. *Id.* Coleman claims the United States Marshals are aware of the law library issues but have not done anything to correct the problem. *Id.*

## **28 U.S.C. § 1915A**

The Complaint is now subject to preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the

*pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### Dismissal of Improper Defendant

Coleman has named the United States Marshals Service a defendant. The United States Marshals Service is an agency of the United States. *Gary v. Gardner*, 445 F.App'x. 465, 466 (3d Cir. 2011). Because the United States Marshal Service is a federal agency, it is not amenable to suit under 42 U.S.C. § 1983 which provides a remedy for violations of federal rights only when the violation is committed by a person operating under color of state law. *See* 42 U.S.C. § 1983. Although an individual federal agent may be held liable for damages for his unconstitutional conduct, *see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), federal agencies are not liable for damages for unconstitutional conduct. *See FDIC v. Meyer*, 510 U.S. 471, 483–486 (1994). Accordingly, Plaintiff's claims against the United States Marshal Service must be dismissed pursuant to 28 U.S.C. § 1915A.

### Division of Counts

Based on the allegations of the Complaint, the Court finds it convenient to designate the following counts in this *pro se* action. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

> **Count 1 –** Unconstitutional conditions of confinement claim against Cobb for depriving federal inmates of recreational activities, housing Coleman in small cells with no room for meaningful exercise and limited access to fresh air, which aggravated Coleman's preexisting asthma.
>
> **Count 2 –** Unconstitutional conditions of confinement claim against Cobb for providing an inadequate prison diet, devoid of fresh food, including fruit.
>
> **Count 3 –** Access to the courts claim for failing to provide plaintiffs with access to a law library.

The Complaint does not survive review under § 1915A, and it shall be dismissed. Any

other intended claim that has not been recognized by the Court is considered dismissed as inadequately pleaded under the *Twombly* pleading standard.

## Discussion

*Legal Standard - Conditions of Confinement Claims*

Before screening Counts 1 and 2, the Court must consider what legal standard applies. The applicable standard depends on Plaintiffs' legal status on the date of the alleged constitutional deprivations. *Collins v. Al-Shami,* 851 F.3d 727, 731 (7th Cir. 2017). The Fourth Amendment applies to the period of confinement between a warrantless arrest and the probable-cause determination; the Due Process Clause of the Fourteenth Amendment governs after the probable-cause determination has been made; and the Eighth Amendment applies after a conviction." *Id.* (citations omitted). The Complaint does not disclose which status applies to Plaintiffs. However, the Court need not resolve the matter at this time. This is because, regardless of which standard applies, Counts 1 and 2 fail to state a claim upon which relief can be granted.

*Count 1*

In Count 1, Plaintiff challenges the following conditions of confinement at the Jail: (1) inability to exercise in a small and crowded cell (specific to Coleman); (2) denial of access to recreational activities (as to all federal inmates at the Jail); and (3) lack of fresh air (specific to Coleman), which exacerbated Coleman's asthma. Coleman also alleges that the lack of recreational activities and in-cell exercise caused him to suffer from leg, neck, and back pain. It is possible that the alleged conditions could state a viable constitutional claim as to Coleman (it is unclear whether Dunk and Miller were exposed to the same conditions). *See* e.g., *Turley v. Rednour*, 729 F.3d 645, 652-53 (7th Cir. 2013) (plaintiff stated Eighth Amendment claim where

cumulative effect of repeated lockdowns deprived him of yard privileges, and cell was too small for physical activity); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) ("Some conditions ... may establish an Eighth Amendment violation in combination when each alone would not do so ... when the deprivations have a mutually enforcing effect which produces the deprivation of a single, identifiable human need, such as food or warmth, for example 'a low temperature at night combined with a failure to issue blankets.' ") (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) ("Lack of exercise could rise to a constitutional violation where movement is denied and muscles are allowed to atrophy, and the health of the individual is threatened.").

The Complaint, however, does not sufficiently allege personal involvement as to Cobb, the only remaining defendant. It is well established that for constitutional violations under § 1983 a government official is only liable for his or her own misconduct. *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015). "This means that to recover damages against a prison official acting in a supervisory role, a § 1983 plaintiff may not rely on a theory of *respondeat superior* and must instead allege that the defendant, through his or her own conduct, has violated the Constitution." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Here, Coleman merely alleges that he asked Cobb about why federal inmates were being denied access to recreational privileges. This allegation, standing alone, states no claim. There is no indication that Coleman complained to Cobb about or that Cobb was otherwise personally responsible for any of the other allegedly unconstitutional conditions described in Count 1. Accordingly, Count 1 shall be dismissed without prejudice for failure to state a claim upon which relief can be granted.

*Count 2*

Coleman claims that the prison diet contains too much processed food and not enough fresh food, including fresh fruit. This claim is similar to the soy diet claims that have been rejected by numerous courts. *See Solano v. Bailey,* 2017 WL 1077052, *2 (S.D. Ill. 2017) (summarizing cases). Here, as with the claim rejected in *Solano* Coleman does not allege any specific medical condition for which the subject diet is contraindicated. *Id.* Thus, as pled, Coleman's allegations fall short of stating a constitutional claim.

Additionally, Coleman has not alleged that Cobb was personally involved in the alleged constitutional deprivation. He alleges that Cobb failed to respond to one or more grievances pertaining to the jail diet. But the fact that Cobb did not respond to a grievance, standing alone, states no claim. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause" of the Fourteenth Amendment. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir.2011) (citations omitted). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, standing alone, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir.1992); *Shango v. Jurich*, 681 F.2d 1091, 1100–01 (7th Cir. 1982). Therefore, the alleged mishandling of grievances does not state a claim for relief.

The Court acknowledges that, under certain conditions, an official may be subject to liability if he or she "knows about unconstitutional conduct and facilitates, approves, condones, or 'turn[s] a blind eye' to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (citing *Vance v. Peter*s, 97 F.3d 987, 992-93 (7th Cir. 1996). However, the minimal allegations pertaining to Cobb ignoring a grievance fall short of stating a claim under the standard articulated in *Perez* or related authority.

Finally, Coleman's allegations pertaining to the Jail's failure to rotate the menu, as is allegedly required under state law, states no claim. *See Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (violation of department procedure or state law is immaterial to whether actions violated federal constitutional right); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (Section 1983 provides a remedy for constitutional violations, not violations of state statutes or regulations); *Archie v. City of Racine*, 847 F.2d 1211, 1216-17 (7th Cir. 1988) (a violation of state law does not give rise to a Section 1983 claim unless it independently violates the Constitution or federal law).

Accordingly, Count 2 shall be dismissed without prejudice for failure to state a claim upon which relief can be granted.

*Count 3*

In Count 3, Coleman alleges that the Jail does not provide inmates with access to a law library, thereby hindering inmates' abilities to act as meaningful advocates in criminal proceedings where they are represented by counsel. The due process clause provides inmates with a right of "meaningful access to the courts." *Bounds v. Smith*, 430 U.S. 817, 824 (1977) overruled in part on other grounds by *Lewis v. Casey*, 518 U.S. 343 (1996). This requires prison authorities to provide inmates with the tools they need "to attack their sentences, directly or collaterally, [or] ... to challenge the conditions of their confinement." *Lewis*, 518 U.S. at 355. This right applies to pre-trial detainees and not just convicts. *Johnson by Johnson v. Brelje*, 701 F.2d 1201, 1207 (7th Cir. 1983). To recover, an inmate must suffer an "actual injury" as a result of the denial. *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir.2009) (citing *Lewis*, 518 U.S. at 350, 116 S.Ct. 2174). "To establish an 'actual injury,' an inmate must show that an attempt to pursue nonfrivolous litigation was hindered by unjustified acts or conditions caused by the defendants."

*Purkey v. Marberry*, 385 F.App'x. 575, 578 (7th Cir. 2010); *see Campbell v. Clarke*, 481 F.3d 967, 968 (7th Cir. 2007) (the plaintiff must allege that "a lack of access to legal materials has undermined," or caused to founder, "a concrete piece of litigation").

Coleman has failed to adequately plead such a claim here. Coleman does not describe how the alleged lack of access to a law library undermined a specific piece of litigation for himself, Dunk, or Miller. Additionally, the Complaint suggests that lack of law library access was problematic for inmates who were represented by counsel in an underlying criminal matter. However, access to legal materials is required only for unrepresented litigants. *See Campbell v. Clarke*, 481 F.3d 967, 968 (7th Cir.2007) (citing *Bounds v. Smith*, 430 U.S. 817, 830–32 (1977)).

Accordingly, Count 3 shall be dismissed without prejudice for failure to state a claim upon which relief can be granted.

*Summary*

Counts 1 through 3 do not survive screening under § 1915A and shall be dismissed without prejudice. Each remaining plaintiff will be granted leave to file an amended complaint in his case, according to the instructions and deadlines set forth in the disposition.

### Joinder of Parties

Before this matter proceeds, the Court must determine whether joinder of the parties is appropriate going forward. Pursuant to Rule 20, district courts can accept joint complaints filed by multiple plaintiffs if the criteria for permissive joinder are satisfied. *See* FED. R. CIV. P. 20; *Boriboune*, 391 F.3d at 855. Rule 20 authorizes individuals to join as plaintiffs in bringing a single action, if: (A) they "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; ***and*** (B) any question of law or fact common to all plaintiffs will arise in the

action." FED. R. CIV. P. 20(a)(1)(A)-(B) (emphasis added).

District courts are given "wide discretion . . . concerning the joinder of parties." *See Chavez*, 251 F.3d at 632 (citing *Intercon Research Assoc., Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 56 (7th Cir. 1982)). The Seventh Circuit has held that "this discretion allows a trial court to consider, in addition to the requirements of Rule 20, 'other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness.'" *Chavez*, 251 F.3d at 632 (quoting *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)). And if joinder would create "prejudice, expense, or delay" the court may deny a request for joinder. *Id.* (citation omitted).

The Court finds that joinder of the parties in a single action going forward is not appropriate. How the alleged facts apply to each individual plaintiff is bound to differ, so each plaintiff's particular situation likely involves a unique "transaction, occurrence, or series of transactions or occurrences." FED. R. CIV. P. 20(a)(1)(A). The Complaint lacks specific allegations pertaining to Miller and Dunk. Without specific allegations pertaining to these individuals, it is unclear whether Miller and Dunk were exposed to the same conditions Coleman was exposed to. For example, it is unclear whether Miller and Dunk were (1) federal prisoners and as such were also denied access to recreational activities; (2) housed in small or overly crowded cells; (3) unable to exercise in their cells; and/or (4) were subject to the same diet as Coleman (Coleman notes that some inmates are allowed fresh food in accord with special dietary restrictions). The Complaint is also silent as to the legal status of Miller, Dunk, and Coleman at the time of the alleged constitutional violations.

Even if Rule 20 is satisfied, the Court can still require the plaintiffs to proceed separately with their claims if joinder would cause "prejudice, expense, or delay." *See Chavez*, 251 F.3d at

11

632; FED. R. CIV. P. 20(b). Allowing the plaintiffs to proceed together will foreseeably delay, complicate, and increase the costs of litigating otherwise straightforward claims, resulting in prejudice to the plaintiffs and defendants. At the time of filing this lawsuit, the plaintiffs were in the Jail. Soon after commencing the action, Coleman was transferred to a federal facility in West Virginia. The difficulties associated with group litigation are compounded by the fact that, of the three remaining plaintiffs, at least one, acting as the lead plaintiff, is now incarcerated out of state, hindering their ability to communicate, make decisions regarding litigation, prepare group pleadings, or respond to deadlines. Given these considerations, the Court finds that joinder is not appropriate going forward.

The Court looks to Rule 21 of the Federal Rules of Civil Procedure for guidance on how to proceed. Rule 21 provides that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The Court may also sever any claim against a party." FED. R. CIV. P. 21. Consistent with Rule 21, the Court shall enter an order in the disposition below that allows each remaining plaintiff to proceed in a separate action, as follows:

A. **Jeffery Coleman**, who has been identified as the "lead plaintiff" in this case, shall proceed as the only plaintiff in this action going forward, and he shall be obligated to pay a filing fee in accord with the Court's prior order granting Coleman's IFP Motion (Doc. 4).

B. **Andrew Dunk** and **Randall A. Miller** shall be terminated as plaintiffs in this action, and no filing fee for this action shall be assessed. New cases shall be opened for both of them. Each shall separately proceed in his newly-opened case, and each shall pay a filing fee in that case, or proceed *in forma pauperis* if his respective Motion for Leave to Proceed *in forma pauperis* is granted, whether or not he chooses to pursue his claims any further.

**Pending Motions**

Plaintiff Andrew Dunk has filed a Motion for Leave to Proceed *in forma pauperis* (Docs.

7 and 21), which will be addressed in a separate order of the Court in his respective case.

Plaintiff Randall A. Miller has filed a Motion for Leave to Proceed *in forma pauperis* (Doc. 9), which will be addressed in a separate order of the Court in his respective case.

### Disposition

**IT IS HEREBY ORDERED** that, for the reasons set forth above, the following plaintiffs are **TERMINATED** as parties in this action: **ANDREW DUNK** and **RANDALL A. MILLER**. The Clerk is **DIRECTED** to open a new case for both of these plaintiffs, captioning them as follows and filing the following documents in each case (and any others listed below): (1) this memorandum and order; (2) the Complaint (Doc. 1); and (3) the preliminary orders (Docs. 5 and 16):

    A. **ANDREW DUNK, Plaintiff v. RANDY COBB, Defendant;**[1] and

    B. **RANDALL A. MILLER, Plaintiff v. RANDY COBB, Defendant;**[2]

The Clerk is **DIRECTED** to change the caption of this case to: **JEFFREY COLEMAN, Plaintiff v. RANDY COBB, Defendant.** Only Plaintiff Coleman will proceed in this action.

Each case shall be tracked so that it undergoes any further preliminary review under 28 U.S.C. § 1915A that is deemed necessary (including review of any amended complaints), if only to allow for the entry of the orders addressing each plaintiff's pauper status, appointment of counsel, and other preliminary matters.

**IT IS FURTHER ORDERED** that the Complaint (Doc. 1), which includes Counts 1 through 3, is **DISMISSED** without prejudice for failure to state a claim upon which relief may

---

[1] In addition to those documents already listed, the Clerk is DIRECTED to file the following document in this case: (1) IFP Motion (Doc. 7); (2) IFP Motion (Doc. 21); (3) Prisoner Trust Fund Account Statement (Doc. 11); (4) Prisoner Trust Fund Account Statement (Doc. 15); and (5) Response (Doc. 17).

[2] In addition to those documents already listed, the Clerk is DIRECTED to file the following documents in this case: (1) IFP Motion (Doc. 9); (2) Prisoner Trust Fund Account Statement (Doc. 8); and (3) Response (Doc. 18).

be granted in this case and in each newly-severed case.

**IT IS FURTHER ORDERED** that defendant **UNITED STATES MARSHAL SERVICE** is **DISMISSED** with prejudice from this action.

Each plaintiff is **GRANTED** leave to file a "First Amended Complaint" in the case opened in his name **on or before April 23, 2018.** Should a plaintiff fail to file a First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, his entire case shall be dismissed with prejudice and he may incur a "strike." FED. R. CIV. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994). The First Amended Complaint is subject to preliminary review pursuant to 28 U.S.C. § 1915A.

When each plaintiff prepares his First Amended Complaint, it is strongly recommended that he use the forms designed for use in this District for such actions. He should label the form, "First Amended Complaint," and he should use the case number for the action opened in his name. Only Plaintiff Jeffrey Coleman should use *this* case number.

The pleading shall present each claim in a separate count, and each count shall specify, by name, each defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that defendant. Each plaintiff should attempt to include the facts of his case in chronological order, inserting any defendant's name where necessary to identify the actors. Plaintiffs should refrain from filing unnecessary exhibits. Each plaintiff should include only related claims in his new complaint. Claims found to be unrelated to one another will be severed into new cases, new case numbers will be assigned, and additional filing fees will be assessed. To enable each plaintiff to comply with this order, the **CLERK** is **DIRECTED** to mail each remaining plaintiff a blank civil rights complaint form.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must stand on its own, without reference to any previous pleading, and each plaintiff must re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. The First Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915A.

Each plaintiff is further **ADVISED** that his obligation to pay the filing fee was incurred at the time this action was filed, thus the filing fee remains due and payable, regardless of whether each plaintiff elects to file an amended complaint in his case. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, each plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his or her whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 26, 2018**

s/J. Phil Gilbert<br>United States District Judge